### Dick et al. *v.* Bailey et al.

Where a sheriff of another State, who had acquired possession and a special property in goods seized under an attachment, before issue joined in the action, without the authority of the law or of the parties litigant, ships the goods to this State, with instructions to an agent to sell them at private sale, he will thereby divest himself of any special property in the goods, and the original owner may resume his control over them here, or they may be seized at the suit of one of his creditors.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. *L. Peirce,* for the plaintiffs. *T. J. Lacy,* for the intervenor, who appealed. A sheriff who abuses his trust is answerable only to the parties injured. His sending property seized beyond the State, in his own name, cannot destroy his special property in it, nor change its ownership. *Brownwell* v. *Manchester,* 1 Pick. 132. At common law a sheriff had authority to remove beyond his bailwick property levied on. Gilbert on Distresses, pp. 49, 50. The right of property and possession was in the sheriff alone, after the seizure. 13 Johnson, 151. 4 Burr. 1563. He could maintain trespass or trover. 6 Johns. 196. 7 Cowen, 332. 8 Wend. 667. *Hunton,* on the same side.

The judgment of the court was pronounced by

SLIDELL, J. The plaintiffs allege that *Bailey,* a planter and a resident in Louisiana, is indebted to them for supplies furnished to his plantation, and for which they have a privilege upon his crop; that he shipped a portion of his crop to them for the purpose of paying them, and transmitted a bill of lading, but that the cotton on its transit was taken at Vicksburg, in Mississippi, by some person unknown, and was forwarded to *Payne & Harrison* of New Orleans. They pray for judgment with privilege upon the cotton or its proceeds. *Payne & Harrison* answered that they had sold the cotton before the writ of sequestration issued, and held the proceeds subject to the order of the court; that it had been received by them as consignees under a bill of lading in the name of the sheriff of Warren county as shipper, and under a letter of instructions from that officer to sell the cotton forthwith and remit the proceeds to him. *Steel,* in his capacity of sheriff, intervened in the cause, alleging a property in himself acquired by the levy of a writ of attachment at Vicksburg, upon the property then on board a steamer, in the suit of *Freeman* v. *Bailey,* and his shipment to *Payne & Henderson* for sale on his account as sheriff. *Freeman* also intervened, and joined in the claim of the sheriff. *Bailey* answered by confessing the indebtedness to *Dick & Hill* and their right of privilege, and denying the right of *Payne & Harrison,* or any person other than *Dick & Hill.* The court below gave judgment against the sheriff and *Freeman,* and in favor of the plaintiffs.

Two questions only have been discussed by counsel: First, whether the acts done by the sheriff at Vicksburg constituted a seizure of the cotton and created a possession in the sheriff; and secondly, whether, supposing the sheriff to have seized and acquired possession, his special ownership so created was lost by his subsequent act of sending it out of the State of Mississippi to *Payne & Harrison,* with the instructions and for the purpose above stated.

The conclusion to which we have come on the second point renders it unnecessary to consider the first. We will assume that the sheriff did seize and take possession of the property under a lawful writ. The intervenor contends,

DICK
<br>v.
<br>BAILEY.

and we think correctly, that a sheriff who seizes goods under lawful process acquires a special property in them, which would authorize him to maintain an action of trover against a wrong doer.   It is also true that this special property is not lost if the sheriff commits the custody of the goods to a person chosen by himself, such person being considered his agent or servant.   Nor are we prepared to say that even the removal of the property out of the sheriff's bailwick, or out of the State of Mississippi, by himself or servant, would, under all circumstances, divest such special property.   Upon this point the authority cited by the intervenor is entitled to great respect.   In that case (*Brownwell* v. *Manchester*, 1 Pick. 233,) the sheriff of a county in Massachusetts attached some sheep, removed them into the State of Rhode Island, and delivered them to two persons, chosen by himself, for safe keeping.   Those persons put them in charge of a third for safe keeping, and the sheep were forcibly taken from this keeper by a stranger, who afterwards delivered them to the defendant in attachment.   The sheriff brought an action of trespass against the wrong doers, and recovered.   In the argument of the cause the point was expressly urged, that the sheriff had no authority to act without the State, and that as soon as the chattels were carried into Rhode Island the attachment was dissolved, and the possession of the officer became wrongful.   But the court held that the special property was not so determined, and said that there was no difference, as to the authority of the officer over the goods, between carrying them just over the line of an adjoining State and carrying them into an adjoining county, which it seems, at common law, the sheriff might, in some cases, lawfully do.

But, conceding to this authority its full weight, the case before us differs in three obvious particulars.   The object of removing the animals into the adjoining State might well have been their better pasturage and preservation; but there is no reason to suppose that the cotton could not have been kept as safely at Vicksburg as in New Orleans.   The next point of distinction is much more important.   In that case the sheriff was acting in the accomplishment of a lawful purpose, the safe keeping and preservation of the property, which was an official duty.   Here the purpose was an unlawful one, and a gross violation of his official duty.   Before issue joined in the cause, and even any notice of the defendant of the existence of the suit, he sent the property out of his bailwick and State, for the purpose of selling it forthwith at private sale, and with peremptory orders to the consignee to do so.   This was entirely beyond, and in violation of, his official duty and authority, and it is not pretended that the defendant and owner, *Bailey*, ever sanctioned the proceeding.   The sheriff, then, by thus abusing his authority and vloiating his official duty, became, as it would seem under the common law authorities, a trespasser *ab initio*.   See the opinion of Lord Ellenborough, in *Phillips* v. *Bacon*, 9 East. 302, and the cases cited in Sewall on Sheriffs, 255.   The third point of distinction also is material. In *Brownwell's* case the trespasser who disturbed the possession of the sheriff was a mere stranger.   But here the party who disputes his special ownership is a *bonâ fide* creditor, acting through the ministry of the law, and with the concurrence of the original owner.

Looking, then, to the fact that the sheriff, if he ever acquired possession and a special property, brought the goods out of the State of Mississippi without authority of the law or of the parties litigant, for the accomplishment of an unlawful purpose, we consider him as standing before us without a special property in the goods, and that the original owner might have reclaimed and re-

DICK
*v.*
BAILEY.

sürnied thé control over them after they reached this State. And if he could do so we see no reason why the plaintiffs should not be allowed to subject the property to their privileges, especially when the original owner joins with them against the trespasser, and had shipped it to the plaintiffs before the attachment.                                              *Judgment affirmed.*